UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| HAILEY LANE FRAZIER and <br> TIMOTHY FRAZIER, <br><br> Plaintiffs, <br><br> vs. <br><br> DELTA AIR LINES, INC. <br><br> Defendant | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br><br> CASE NO. 3:21-CV-00339 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE FRENSLEY <br> JURY DEMAND |

## SECOND AMENDED COMPLAINT

TO THE HONORABLE COURT:

For Plaintiffs, HAILEY LANE FRAZIER and TIMOTHY FRAZIER, Second Amended Complaint, against Defendant DELTA AIR LINES, INC., Plaintiffs allege the following upon information and belief:

1. **Jurisdiction**. Federal Question jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 as this matter involves an accident that occurred during international travel, and Plaintiffs cause of action arises from a treaty agreement, namely Convention for the Unification of Certain Rules Relating to International Carriage by Air, opened for signature on May 18, 1999, reprinted in S. Treaty Doc. 106-45 at 27 (2000) 1999 WL 33292734 (entered into force November 4, 2003) (treaty), commonly referred to as the Montreal Convention (hereinafter "Montreal Convention").[1]

---

[1] Full text also available here: https://www.iata.org/en/policy/smarter-regulation/mc99/

2. Diversity jurisdiction is proper under 28 U.S.C. §1332. The parties are completely diverse in citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. At all times material hereto, Plaintiffs were citizens of Tennessee and Defendant was incorporated in Delaware and has its principal place of business in Georgia.

4. **Venue** is proper in this district pursuant to 28 U.S.C. Sec. 1391, in that Defendant DELTA AIR LINES, INC. has offices and transacts business within the Middle District of Tennessee, operating regular commercial flights from Nashville International Airport. Defendant DELTA AIR LINES, INC. regularly and systematically conducts business, solicits business, and earns substantial revenue from business conducted within this district. *See also* Montreal Convention, Ch. III, art 33(2) ("In respect of damage resulting from the death or injury of a passenger, an action may be brought . . . in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air. . . .").

5. **Parties.** Plaintiffs HAILEY LANE FRAZIER and TIMOTHY FRAZIER are husband and wife and citizens of the State of Tennessee and reside in Murfreesboro, Rutherford County, Tennessee.

6. Upon information and belief, Defendant DELTA AIR LINES, INC. is a foreign corporation authorized to do business in the State of Tennessee, with a principal executive office located at 1030 Delta Blvd., Dept 982; Atlanta, GA 30354-1989 and with a designated Tennessee Secretary of State, Division of Business Services Department of

State, Registered Agent: Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312.

7. **Facts.** Upon information and belief, Defendant DELTA AIR LINES, INC. was and is a common carrier engaged in the business of transporting passengers for hire by air and operates an extensive international and domestic network of flights.

8. Upon information and belief, Defendant DELTA AIR LINES, INC. employs a flight crew responsible for the safe and secure operation of its flights as well as the safety and well-being of its passengers.

9. On May 1, 2019, Defendant DELTA AIR LINES, INC. operated and controlled a certain aircraft, designated as DELTA AIR LINES Flight 116 (the "subject aircraft"), from Hartsfield–Jackson Atlanta International Airport non-stop to Stuttgart, Germany (the "subject flight"). The flight had a scheduled departure of 6:04 pm with an arrival at 8:05 am. Upon information and belief, this 9-hour flight departed and arrived on schedule and is referred to as a "red-eye" flight due to its scheduled night time departure and early morning arrival.

10. The subject flight was conducted on an aircraft owned, leased, operated, staffed, or otherwise controlled by the Defendant DELTA AIR LINES, INC.

11. DELTA AIR LINES, INC. was responsible for the training, management, supervision, and/or control of its flight crew aboard the subject flight, including but not limited to the crew's adherence to their own internal standard safety policies and protocol as well as federal policies, regulations, guidelines and standards.

12. Plaintiff HAILEY LANE FRAZIER was a fare-paying passenger lawfully aboard the subject flight.

13. While aboard the subject aircraft, Plaintiff HAILEY LANE FRAZIER, while sleeping, was sexually assaulted by a neighboring passenger, when he placed his hand down her pants, inserted his fingers, and grabbed her breast.

14. There is an alarming rise of sexual assault on flights. Indeed recently, on April 26, 2018, the U.S. Department of Justice's Federal Bureau of Investigation alerted the public about the rising incidents of sexual assault aboard aircraft.[2] FBI Special Agent David Gates, who is based at Los Angeles International Airport (LAX) and regularly investigates these cases, stated that "even one victim is unacceptable. He reported, ". . . seeing more reports of in-flight sexual assault than ever before." In fiscal year 2014, 38 cases of in-flight sexual assault were reported to the FBI. In 2017, that number increased to 63 reported cases. "It's safe to say that many incidents occur that are not reported," said Gates.

15. Caryn Highley, a special agent in the FBI's Seattle Division who investigates crimes aboard aircraft, further stated, "Unfortunately, people don't think things like this happen on airplanes." She continued, "There is a perception on an airplane that you're in a bubble of safety." Yet the FBI's April 26, 2018 report captured HAILEY LANE FRAZIER'S ordeal, stating, "[b]ut particularly on overnight flights, where people may consume alcohol or take sleeping pills, and a dark cabin and close-quarter seating can give the perception of privacy and intimacy, offenders are tempted by opportunity."

16. This problem has not gone unnoticed by the airlines and their flight attendants. "One in five flight attendants has witnessed a passenger being assaulted or had an assault reported to them, according to a 2017 survey of nearly 2,000 flight attendants."[3] However, the vast

---

[2] https://www.fbi.gov/news/stories/raising-awareness-about-sexual-assault-aboard-aircraft-042618
[3] Paul, Kari, #MeToo reaches 35,000 feet as passengers and flight attendants speak out, https://www.marketwatch.com/story/the-metoo-movement-has-now-reached-35000-feet-2018-05-23, May 28, 2018 12:29 p.m. ET.

majority of flight attendants have no specific training regarding sexual assault, the survey found.[4]

17. Indeed, prior to the subject flight, the U.S. Department of Transportation established the National In-Flight Sexual Misconduct Task Force ("Task Force") as a subcommittee of the Aviation Consumer Protection Advisory Committee on February 11, 2019. Their Report on Sexual Misconduct on Commercial Flights by the National In-Flight Sexual Misconduct Task Force, March 2020, included a section – violated by Defendant DELTA AIR LINES, INC. on the subject flight -- titled, Training on Essential Response Skills and Communications:

> The Task Force discussed the importance of "trauma-informed" training, i.e., to have flight attendants trained to respond in a trauma-informed, victim-centric way.[] The goal is to obtain information necessary for law enforcement to pursue a case without unintentionally revictimizing the individual, or skewing information due to personal biases. Victim centered training allows response staff to acknowledge and prioritize the needs of the victim to ensure a compassionate, empathetic, and nonjudgmental response. The Task Force discussed the purpose of taking steps to make a victim feel safe, supported, and empowered so that they are able to play a contributing role in the response process. The Task Force learned that trauma-informed training provides response staff with an understanding of how trauma affects the brain which impacts how a victim will respond and react during and after the incident. This is particularly relevant when determining credibility as trauma can present in ways that appear to be deception on behalf of the victim.
>
> These components of response training are critical in the emotional recovery of a victim, and provides response staff with strategies for how to work with individuals in crisis. It is important that the airline's actions are sensitive to the victim and do not result in the victim being blamed or the incident being dismissed. In this context, the Task Force discussed the training in the cruise industry, where employees learn how to communicate and interact with victims and how to combat potential bias that may influence an employee's response.[5]

---

[4] *Id.*
[5] https://www.transportation.gov/individuals/aviation-consumer-protection/report-sexual-misconduct-commercial-flights-national at page 62-63 (footnote omitted).

18. Plaintiff HAILEY LANE FRAZIER escaped to the lavatory for safety and told the flight attendant seated in the galley what happened. Plaintiff believes the flight attendant's name was Lana, and after Plaintiff told Lana what happened, Lana said something to the effect of "so you feel really violated…I don't know what to do…Let me go get help." Plaintiff waited in the bathroom area for about 30 minutes, and eventually sat on the floor because she did not know what else to do. Another flight attendant eventually approached her and told her to return to her seat. Plaintiff said "no" and again explained what happened, and the flight attendant responded to the effect of "the flight is full you have to return to your seat." Plaintiff refused to move, and Lana eventually returned with several other flight attendants, one of whom was male, and Lana asked Plaintiff to repeat her story for a third time. All told, Plaintiff believes she had to rehash what happened at least three times to different members of the flight crew, and despite providing the relevant information over and over again, no one offered her a new seat, and she was forced to continue sitting on the floor. During this time, Plaintiff told Lana emphatically "I want to press charges. I want the police to meet the plane. I want him arrested." Lana replied along the lines of "I'm still trying to figure out what to do." The flight crew's failure to respond, and inability to formulate a plan regarding how to proceed, left Plaintiff feeling extremely vulnerable and compounded her fears for her safety.

19. After one of the flight attendants struck Plaintiff with a beverage cart and sitting on the floor for about an hour, Plaintiff was finally given a new seat. A flight attendant (not Lana) told Plaintiff to return to her seat and get her things. Plaintiff explained that she did not want to go anywhere near the man and asked the flight attendant for help. The flight attendant, however, refused to help, and Plaintiff was forced to return to her rapist to get

her belongings. When the flight attendant put her in a new seat Plaintiff said "what do I have to do to make sure the police are there when we land." The flight attendant responded "you don't have to do anything other than enjoy your seat."

20. At this point on the subject flight, Plaintiff had no confidence the police would be waiting when the flight landed, so she hit her call button. After five minutes the light went off and no one responded. Shortly thereafter, Lana walked by and Plaintiff told her "I need you to understand me, I want the police to meet the airplane." Lana responded along the lines of "okay, you want to press charges," and she then, finally, reported the assault to the captain. After conferring with the captain Lana returned to Plaintiff and informed her the police would be waiting when they disembarked. The plane then landed just eleven minutes later.

21. **Cause of Action.** At the time of this incident, Delta was engaged in international carriage as defined in Article 1 of the Montreal Convention, and the Montreal Convention is therefore applicable to this action, pursuant to that same Article.

22. A midflight accident under Article 17 of the Montreal Convention occurred with the unexpected penetration, groping, and DELTA AIR LINES' Flight Attendants' failure to ensure safe travel and avoiding further traumatization by their lack of "trauma-informed" training.

23. Pursuant to Articles 17 and 21 of the Montreal Convention, DELTA AIR LINES is strictly liable for damage sustained in the case of bodily injury to a passenger on board the aircraft up to 128,821 Special Drawing Rights. DELTA AIR LINES is also liable for damages beyond 128,821 Special Drawing Rights unless DELTA AIR LINES proves that (a) such damage was not due to its negligence, wrongful act, or omission of DELTA AIR LINES

or its servants or agents; or (b) such damage was due solely to the negligence or other wrongful act or omission of a third party.

24. Knowing the occurrence of mid-flight sexual assaults, especially on red eye flights, DELTA AIR LINES offered no protection to Plaintiff, nor adequately provided "trauma-informed" training, *i.e.,* to have flight attendants trained to respond in a trauma-informed, victim-centric way.

25. Indeed, DELTA AIR LINES training indicates a lack of social support and social betrayal to sexual assault survivors. Social betrayal involves bystanders either not being emotionally supportive or, worse, guilting or shaming the victim. Social betrayal includes a lack of assistance or help from individuals who had the opportunity to step in to help the victim but refrained from doing so. Both a lack of social support and social betrayal leads to negative long-term mental health outcomes and are highly correlated with the development of PTSD. Essentially, when a victim is aware that others could have assisted but did not, the victim often feels abandoned and begins questioning the dependability and trustworthiness of the general public. Conversely, when bystanders do help the victim, he or she is more likely to see only the offender as responsible and thereby be able to compartmentalize the malicious behavior.

26. DELTA AIR LINES failed to adequately train its personnel and/or failed to adopt and/or failed to execute sufficient policies or procedures to prevent, deter, or properly respond to sexual assaults.

27. DELTA AIR LINES failed to adopt and/or failed to execute sufficient policies or procedures to address sexually motivated attacks that have occurred on their flights.

28. Indeed, Plaintiff's losses were significantly exacerbated by the response of the flight crew. DELTA AIR LINES crewmembers – in a position of authority over the passengers during the flight – were grossly negligent and outrageous. Plaintiff sought help in a distraught state after an extremely traumatic event; she felt trapped with no escape from her perpetrator and was told by DELTA AIR LINES to return to her seat, *i.e.,* next to a known rapist. Plaintiff asked for help, and the response from DELTA AIR LINES' flight attendants left her feeling like she was not being taken seriously, especially by asking her to continually repeat the incident. Plaintiff refused to return to her seat and sat down in the aisle, where another flight attendant bumped her with a beverage cart, causing physical pain, and told her to get out of the way.

29. As a result of the series of sexual assault attacks, and their aftermath, Plaintiff endured pain, shock, emotional distress, embarrassment, mortification, anxiety, anxiety, loss of enjoyment of life, past and future income, past and future health care expenses, and further injuries and damages as will be proven at trial.

30. Plaintiffs were harmed due to the negligence, careless, recklessness, wrongful acts, wrongful omissions of the defendant DELTA AIR LINES' agents, servants and/or employees in a manner that directly and proximately caused and/or contributed to Plaintiffs' injuries.

31. As a common carrier and/or commercial airline carrier, Defendant DELTA AIR LINES, INC. owed a duty of care to its passengers, including Plaintiffs to ensure safe travel and avoiding further traumatization.

32. As a common carrier transporting passenger for a fee, Defendant DELTA AIR LINES, INC. contracted with its passengers, including Plaintiff, to provide reasonable safe and secure air transportation.

33. Pursuant to its contractual obligations, including express and implied warranties, Defendant DELTA AIR LINES, INC. had a duty to properly train and instruct its flight crew experience of not causing further traumatization to sexual assault victims and to provide "trauma-informed" training, *i.e.,* to have flight attendants trained to respond in a trauma-informed, victim-centric way.

34. Defendant DELTA AIR LINES, INC.'s failures to perform pursuant to its contractual obligations, including express and implied warranties, and its contract for carriage, resulted in exacerbating Plaintiffs' mental, emotional, physical, and psychological injuries, and resulting expenses, losses and damages, the amount of which is undetermined at this time.

35. Defendant, DELTA AIR LINES, INC. was aware of the likelihood of sexual assault upon its passengers occurring on late, red-eye flights, Additionally, Defendant DELTA AIR LINES, INC. was aware of not causing further traumatization to sexual assault victims and the need to provide "trauma-informed" training, *i.e.,* to have flight attendants trained to respond in a trauma-informed, victim-centric way.

36. Defendant DELTA AIR LINES, INC. was aware of increasing incidents of sexual assault on board commercial aircraft but did not offer training to its cabin crew of the dangers and warning signs to protect its passengers.

37. Defendant DELTA AIR LINES, INC.'s actions and omissions constituted willful or wanton negligence, and/or recklessness, and/or manifested a conscious disregard and

willful indifference to the safety of its passengers, and /or conduct so reckless as to amount to such disregard.

38. Defendant DELTA AIR LINES, INC.'s willful, wanton and/or reckless conduct was the direct and proximate cause of the resulting injuries and damages suffered by Plaintiffs.

39. **Loss of Consortium Cause of Action**. Plaintiffs HAILEY LANE FRAZIER and TIMOTHY FRAZIER at the time of the subject flight, and at all subsequent relevant times, were married.

40. Plaintiff TIMOTHY FRAZIER has suffered, and will continue to suffer, loss of consortium, including loss of martial companionship, society, affection, support, services, assistance, conjugal fellowship, and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the failures and breaches by Defendant DELTA AIR LINES.

41. **Damages.** As a result of the incident described herein, the actions and omissions of DELTA AIR LINES, Plaintiffs were injured.

42. The accident caused bodily injury when the neighboring passenger, without HAILEY LANE FRAZIER'S consent, penetrated her and groped her, both causing physical pain and emotional damages significantly exacerbated by the response of the flight crew when among other items listed herein, she sought help in a distraught state after an extremely traumatic event; where she felt trapped with no escape from her perpetrator and was told to return to her seat, next to her rapist.

43. Plaintiffs were seriously and permanently injured.

44. Plaintiffs have suffered in the past, continue to suffer presently, and will suffer in the future, damages which include, but are not limited to, the following: physical pain and

suffering; shock; emotional distress; mortification; anxiety; anguish; depression; loss of enjoyment of life; loss of income; expenses of health care, including counseling, and other medical special damages; and further injuries and damages as will be proven at trial.

45. Plaintiffs suffered great pain, agony and mental anguish, and in the future shall continue to suffer from same.

46. Plaintiffs suffered economic loss and, in the future, shall continue to suffer from same.

47. Plaintiffs were forced to expend sums of money on medical treatment and in the future shall continue to expend money on same.

48. Plaintiffs were deprived of their enjoyment of life, pursuits and interests and in the future shall continue to be deprived of same.

49. Plaintiffs' marriage was impacted and a loss of consortium occurred and, in the future, shall continue to occur. Plaintiff TIMOTHY FRAZIER is entitled to an award for past and future loss of consortium, including loss of martial companionship, society, affection, support, services, assistance, conjugal fellowship, and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the failures and inaction of Defendant DELTA AIR LINES.

50. As a result of the foregoing, Defendant is liable to pay full, fair and reasonable damages to Plaintiffs recoverable under Tennessee law, the Montreal Convention, or any other applicable law or treaty

WHEREFORE, Plaintiffs demand judgment against Defendant DELTA AIR LINES, INC. in an amount to be determined at trial, together with interest, costs, attorneys' fees as allowed by law, and disbursements of this action.

Respectfully submitted,

/s/ R. Chris Cowan
Chris Cowan
CO Bar #: 48434 *(Admitted Pro Hac Vice)*
DOWNS MCDONOUGH COWAN & FOLEY, LLC
2051 Main Ave.
Durango, CO 81301
Office No.: (970) 247-8020
Fax No.: (970) 247-8877
E-mail: chris@swcolaw.com

and

H. Anthony Duncan
TN Bar #: 20056
TONY DUNCAN LAW
Truxton Trust Bldg.
4525 Harding Pike, Ste. 200
Nashville, TN 37205
Office No.: (615) 620-4471
Fax No.: (615) 620-4521
E-mail: tonydlaw@gmail.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on Wednesday, June 30, 2021, a true and exact copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. All non-subscribers to the Court's electronic filing system will be served via U.S. Mail as indicated.

H. Anthony Duncan
4525 Harding Pike, Suite 200
Nashville, TN 37205

Wendy L. Longmire
330 Commerce Street, Suite 110
Nashville, TN 37201

Richard G. Grotch
JETSTREAM LEGAL APC
80 Cabrillo Highway North, Suite Q-325
Half Moon Bay, CA 94019

/s/ Chris Cowan
Chris Cowan

Second Amended Complaint    Page **13** of **13**

Case 3:21-cv-00339    Document 34    Filed 07/07/21    Page 13 of 13 PageID #: 249